UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
SILVIA DIAZ-ROA,                                              :
                                                              :   Civil Action No.:
                Plaintiff,                                :
                                                              :
      v.                                                  :   **COMPLAINT**
                                                              :
HERMES LAW, P.C., SYZYGY LEGAL TECH,                          :
INC. d/b/a CLAIMDECK, DWAYNE HERMES,                          :   **Jury Trial Demanded**
and ANDREA HERMES,                                            :
                                                              :
                Defendants.                               :
                                                              :
------------------------------------------------------------- X

      Plaintiff Silvia Diaz-Roa ("Plaintiff" or "Diaz-Roa"), by and through her undersigned counsel, as and for her Complaint against Defendants Hermes Law, P.C. ("Hermes Law" or the "Firm"), Syzygy Legal Tech, Inc. d/b/a ClaimDeck ("ClaimDeck"), Dwayne Hermes and Andrea Hermes (collectively, "Defendants"), hereby alleges as follows:

## PRELIMINARY STATEMENT

    1.    Diaz-Roa was an extraordinary employee for Hermes Law and ClaimDeck. She started as an intern and then progressively worked her way up to Project Manager, Senior Project Manager, Director of Innovation, Head of Product and Chief Operating Officer, all while earning dual master's degrees from Yale University. Diaz-Roa even helped Dwayne Hermes create the idea for ClaimDeck, a computerized litigation management system.

    2.    Dwayne Hermes raved about Diaz-Roa's exceptional skills, describing her as someone who "get[s] stuff done" and produces "top quality work all the time." He was particularly effusive about Diaz-Roa's ability to work with colleagues, praising Diaz-Roa for "encouraging" and "helping" co-workers produce "top quality work," and describing her as a

1

"supportive [T]eam member." Others agreed, lauding Diaz-Roa's "calm leadership style," and describing her as a "great teammate" who creates a "harmonious team atmosphere."

3.  That all changed in late 2023 when Diaz-Roa expressed her intention to exercise her vested stock options, which she earned as part of her compensation. In December 2023, Diaz-Roa gave notice to Dwayne Hermes, among others, that she intended to exercise her options, which were worth seven figures, and on January 23, 2024, she reaffirmed her intention in writing. Only seventeen days later, Defendants fired Diaz-Roa, blocking her right to exercise her vested stock options, claiming they had "cause" to do so. In fact, they had no "cause." Rather, they acted in bad faith to prevent Diaz-Roa from realizing earned compensation.

4.  Further, Diaz-Roa was sexually harassed while working for Defendants. She was directed by Dwayne and Andrea Hermes to flirt and even become romantically involved with ClaimDeck clients, potential clients and partners. During one client business dinner, Dwayne Hermes compared Diaz-Roa to a piece of steak, humiliating her in front of a dinner of all men. Moreover, Dwayne Hermes fixated on Diaz-Roa's appearance in a sexist and disparaging manner.

5.  Defendants' actions violated the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"); the New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq.* ("NYSHRL"); the New York Labor Law ("NYLL") § 193; and Delaware law.

## JURISDICTION AND VENUE

6.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity and the amount in controversy exceeds $75,000.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

**PARTIES**

8. Plaintiff Diaz-Roa is an individual domiciled in New York, New York. At all relevant times, Diaz-Roa met the definition of an "employee" under the relevant statutes.

9. Defendant Hermes Law is a Texas corporation with its principal place of business in Texas. At all relevant times, Hermes Law met the definition of an "employer" under the relevant statutes.

10. Defendant ClaimDeck is a Delaware corporation with its principal place of business in Texas. At all relevant times, ClaimDeck met the definition of an "employer" under the relevant statutes.

11. Defendant Dwayne Hermes is an individual domiciled in Texas.

12. Defendant Andrea Hermes is an individual domiciled in Texas.

**FACTUAL ALLEGATIONS**

**I.    Diaz-Roa's Background**

13. Diaz-Roa is an experienced entrepreneur with impeccable credentials who started a successful business while attending Wesleyan University for her undergraduate degree.

14. On February 20, 2017, Hermes Law hired Diaz-Roa as an intern.

15. At the time, Diaz-Roa intended the position to be temporary and last until she began her graduate studies in the fall at the Yale School of Public Health, where she had been accepted with a full-ride scholarship.

16. However, Diaz-Roa was such an extraordinary employee that Hermes Law promoted her to a full-time position as a Project Manager within three months.

17. Shortly thereafter, they asked Diaz-Roa to defer graduate school to continue her work at the Firm. She agreed and promptly earned promotions to Senior Project Manager and Director of Innovation, positions with significant responsibility that placed Diaz-Roa in a management role.

18. From approximately August 2018 through the summer of 2021, Diaz-Roa worked part-time for Hermes Law and ClaimDeck while attending Yale University.

19. Diaz-Roa graduated from Yale University in May 2021, having earned dual master's degrees in business administration and public health, and then promptly returned to full-time work for Hermes Law and ClaimDeck.

II. **ClaimDeck Background**

20. In August 2019, Diaz-Roa and Dwayne Hermes came up with the idea for ClaimDeck, a computerized litigation management system.

21. ClaimDeck was incorporated in February 2020.

22. Thereafter, Diaz-Roa continued to be employed by Hermes Law but performed work for ClaimDeck and was supervised by Dwayne Hermes.

23. Because of Diaz-Roa's continued excellent performance, in December 2020, Defendants awarded Diaz-Roa compensation in the form of options to purchase 58,825 shares of ClaimDeck stock (approximately 10% of the company's shares). The options were not immediately exercisable but vested over three years, at which point they would become earned.[1]

---

[1] The options agreement is governed by Delaware Law.

### III. Diaz-Roa Becomes the Driving Force Behind ClaimDeck

24. In May 2021 Diaz-Roa graduated and almost immediately thereafter moved to New York City to work full-time for Hermes Law and ClaimDeck, who had significant business and many potential clients in the area.

25. While living and working in New York, Diaz-Roa utilized equipment provided to her by Hermes Law and ClaimDeck. She also met with existing and potential clients as well as other ClaimDeck employees. Indeed, Dwayne Hermes frequently traveled to New York to conduct business.

26. Diaz-Roa continued to excel while working in New York and became the face of ClaimDeck and the main driver of its success.

27. Diaz-Roa took on significant roles and responsibilities at ClaimDeck, including as Head of Product and Chief Operating Officer.

28. Diaz-Roa attended conferences such as the Insuretech Connect Conference and the Litigation Management Symposium to give talks about the product. She also spoke about ClaimDeck's product at the Insurance Federation of New York breakfast and on prominent industry podcasts, and attended no fewer than 10 conferences and events as a representative of ClaimDeck, making the company more prominent and generating business leads.

29. Diaz-Roa also built the fundamental infrastructure of ClaimDeck. She laid the foundations for ClaimDeck's business plan; created and maintained ClaimDeck's financial model; designed ClaimDeck's original website; was instrumental in setting up ClaimDeck's people operations and culture; led the successful integration of four major Application Programming Interfaces and numerous other technology solutions across departments; negotiated all of ClaimDeck's vendor and client contracts; managed relationships with vendors;

designed ClaimDeck's initial customer success framework and supported its subsequent enhancements; built important tools like an ROI tool, the ClaimDeck Help Center and ClaimScore algorithms; led the team of product managers, engineers and designers; conducted market research; and executed user reviews.

30. Diaz-Roa's work led ClaimDeck to achieve enormous growth and significant market presence within only a few years.

31. Moreover, Diaz-Roa earned industry accolades. In June of 2023, she was named a 35 Under 35 Rising Star Executive by Rising Insurance Star Executives ("RISE") Professionals. In December of 2023, she was named a Phenom Under 40 by the Claims and Litigation Management Alliance and was selected to be the co-chair of RISE Professionals' Innovation Committee.

32. She also garnered important speaking engagements, including at the Claims Litigation Management Annual Conference, the Wholesale & Specialty Insurance Association's Insurtech Conference, and the RISE Leadership Summit & Awards Gala.

**IV.**     **Dwayne Hermes and Others Rave About Diaz-Roa's Performance**

33. Dwayne Hermes was effusive in his praise of Diaz-Roa. For example, in May 2022, the year after Diaz-Roa returned to work after graduating from Yale, Dwayne Hermes described Diaz-Roa's work in glowing terms:

> Getting stuff done, getting stuff done that she has never done before, bring top quality work all the time and encouraging/helping others to do the same, getting into the nitty gritty detail needed to get tough projects done and to get performance needed from others (Codal/SOC), being a supportive Team member—helping to see that others have what they need and on-boarding effort with them. . .

34. Remarkably, in Diaz-Roa's May 2022 performance review, neither Dwayne Hermes nor any other reviewer could find a single area where Diaz-Roa needed to improve.

35. The praise for Diaz-Roa continued through 2023. On January 5, 2023, Diaz-Roa was lauded for her "calm leadership style," ability to "recognize an issue, analyze it, and solve it quickly," and capacity to "[get] things done."

36. On April 10, 2023, Diaz-Roa's coworkers raved about many of those same qualities, including being a "[g]reat teammate," displaying a capacity for "rapid problem-solving," and her "knowledge, expertise, and willingness to hear new ideas."

37. On October 11, 2023, Diaz-Roa was commended for her "vision and ideas" and singled out for creating a "harmonious team atmosphere."

## V. Defendants Unlawfully Claw Back Diaz-Roa's Earned Compensation

38. By August 2023, Diaz-Roa's stock options had fully vested. She could now execute her options for ClaimDeck shares, which would give her a 10% stake in ClaimDeck and were worth more than $1 million and growing.

39. In December 2023, Diaz-Roa participated in a call with ClaimDeck accountants, attorney Kevin Vela of Vela Wood Staley Young P.C. and Dwayne Hermes, during which she stated her intention to exercise her right to purchase her stock options.

40. Thereafter, Diaz-Roa was no longer invited to participate in any call regarding ClaimDeck with ClaimDeck accountants or Vela Wood Staley Young P.C., despite her repeated requests.

41. On January 23, 2024, Diaz-Roa reaffirmed her intention to execute her options. She wrote to Dwayne Hermes that she wanted to "purchase [her] options."

42. Seventeen days later, Defendants fired Diaz-Roa without warning, claiming they had "cause" to do so. In fact, there was no "cause." Rather, Defendants acted in bad faith to deprive Diaz-Roa of compensation she had earned by forfeiting her vested options.

## VI.     Diaz-Roa is Sexually Harassed

43.     During her employment, Diaz-Roa was subjected to sexual harassment.

44.     Dwayne and Andrea Hermes regularly encouraged Diaz-Roa to flirt to attract potential clients or use her appearance to attract business.

45.     On other occasions, she was encouraged to become romantically involved with certain individuals in the industry to benefit her employers.

46.     Dwayne Hermes especially fixated on Diaz-Roa's appearance, humiliatingly directing her to "fix" her makeup and accusing her of looking "tired" in front of other ClaimDeck and Hermes Law employees.

47.     Diaz-Roa was not the only victim of Dwayne Hermes's sex-based conduct.  For example, during a 2023 ClaimDeck team retreat, he commented that two female employees looked like "a lesbian couple."

48.     Dwayne Hermes did not fixate on the appearance of male employees.

49.     Dwayne Hermes also humiliated Diaz-Roa sexually.  In or about 2017, he jumped onto a scooter that Diaz-Roa was about to ride, sliding behind her in a compromising position.  A colleague took pictures, preserving the humiliating incident.

50.     In or about November 2023, Diaz-Roa attended a business dinner with Dwayne Hermes and several other men who were either colleagues or business partners.  Diaz-Roa was the only woman.  The men amused themselves as Dwayne Hermes compared Diaz-Roa to a piece of steak.

**FIRST CAUSE OF ACTION**
**(Sexual Harassment Under the NYCHRL)**
*Against All Defendants*

51.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

52.     Defendants discriminated against Plaintiff on the basis of her gender in violation of the NYCHRL by subjecting Plaintiff to disparate treatment based upon her gender, including, but not limited to, subjecting her to sexual harassment.

53.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

54.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

55.     Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
**(Sexual Harassment Under the NYSHRL)**
*Against All Defendants*

56.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

57. Defendants discriminated against Plaintiff on the basis of her gender in violation of the NYSHRL by subjecting Plaintiff to disparate treatment based upon her gender, including, but not limited to, subjecting her to sexual harassment.

58. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

59. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

60. Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
**(Breach of Contract Under Delaware Law)**
*Against Defendants Hermes Law and ClaimDeck*

61. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

62. Defendants manufactured fictitious grounds for terminating Plaintiff's employment.

63. Defendants did so intentionally to deprive Plaintiff of her vested equity.

64. In doing so, Defendants breached the implied covenant of good faith and fair dealing.

## FOURTH CAUSE OF ACTION
### (Deprivation of Earned Compensation Under NYLL § 193)
*Against All Defendants*

65. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

66. NYLL § 193 prohibits covered employers, such as Defendants, from making unauthorized deductions from the wages of any employee.

67. Plaintiff's vested stock options are "wages" as defined in NYLL § 190(1).

68. By depriving Plaintiff of her stock options, Defendants made unlawful deductions and withholdings from Plaintiff's wages.

69. As a result of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages in an amount to be determined at trial, plus liquidated damages, prejudgment interest and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Tortious Interference with Contract Under Delaware Law)
*Against Defendants Hermes Law and Dwayne Hermes*

70. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

71. Section 5(f)(iii) of the 2020 Equity Compensation Plan that Plaintiff signed, granting her equity in ClaimDeck, provides that stock options granted in ClaimDeck are terminated on the date an individual has their employment terminated "by the Employer" for cause.

72. The "Employer" is defined in Section 5(f)(vi)(D) of the 2020 Equity Compensation Plan as "the Company and its subsidiaries."

73. The "Company" is defined in the introductory paragraph of that document as ClaimDeck.

74. Plaintiff was employed by Hermes Law, having received 1) an offer letter for employment with Hermes Law, 2) her paychecks from Hermes Law and 3) her letter of termination from Hermes Law.

75. Dwayne Hermes and Hermes Law had knowledge of Plaintiff's contract with ClaimDeck.

76. In firing Diaz-Roa for "cause" and describing this as a reason to terminate her stock options, Dwayne Hermes and Hermes Law intentionally interfered with the contract that Diaz-Roa signed with ClaimDeck.

77. As a result of the conduct of Dwayne Hermes and Hermes Law, Plaintiff's contractual relationship with this third party has been injured.

78. Dwayne Hermes and Hermes Law acted solely out of malice, and/or used dishonest, unfair and improper means to interfere with Plaintiff's contract.

79. As a direct result of the conduct of Dwayne Hermes and Hermes Law, Plaintiff has suffered, and will continue to suffer, substantial damages, including but not limited to harm to her career development with the tech startup, insurance technology, and legal technology industries, and harm to her personal and professional reputation that has resulted in lost job and business opportunities.

**SIXTH CAUSE OF ACTION**
**(Conversion Under Delaware Law)**
*Against All Defendants*

80. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

81. Defendants, using deceit and misrepresentation, manufactured fictitious grounds to terminate Diaz-Roa's employment in order to terminate her employment.

82. Defendants did so intentionally in order to deprive Diaz-Roa of her vested equity.

83. Diaz-Roa is therefore entitled to the full cash value of the vested equity she has been denied.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein violate the laws of the States of Delaware and New York;

B. Specific performance of her contract;

C. An award of damages against the Defendants, in an amount to be determined at trial, plus interest, to compensate Plaintiff for all monetary and/or economic damages;

D. An award of damages against the Defendants, in an amount to be determined at trial, plus interest, to compensate Plaintiff for all non-monetary and/or compensatory damages including, but not limited to, compensation for Plaintiff's emotional distress;

E. An award of punitive damages in an amount to be determined at trial;

F. An award of attorneys' fees and costs that Plaintiff has incurred in this action;

G. Prejudgment and post-judgment interest on all amounts due; and

H. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: March 20, 2024
      New York, New York

**WIGDOR LLP**

By: _____
    Valdi Licul
    William Baker

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
wbaker@wigdorlaw.com

*Counsel for Plaintiff*